81 F.3d 118
 Robert E. HILL, individually and as parent and next friend
of Tasha R. Hill, a minor; Cynthia G. Hill,
individually, and as parent and next
friend of Tasha R. Hill, a
minor, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 94-1434, 94-1594.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 5, 1996.
 
 Appeal from the United States District Court for the District of Colorado (D.C. No. 90-B-1071); Lewis T. Babcock, Judge.
 William G. Cole (Robert S. Greenspan, with him, on the briefs), Appellate Staff, Civil Division, Department of Justice, Washington, D. C., for Defendant-Appellant.
 Shelley B. Don (David L. Hiller, with him, on the brief) of Don, Hiller & Galleher, P.C., Denver, Colorado, for Plaintiffs-Appellees.
 Before ANDERSON and McKAY, Circuit Judges, and COOK,* Senior District Judge.
 McKAY, Circuit Judge.
 
 
 1
 The United States appeals certain aspects of a judgment entered against it in this Federal Tort Claims action. We have jurisdiction under 28 U.S.C. 1291. This case was brought on behalf of Tasha Hill, a minor, by her parents. Tasha was seriously injured as a result of the government's negligence at an Army medical facility in Colorado. The government conceded liability and the district court awarded substantial damages to Tasha and her parents, with the damages awarded to Tasha to be placed in a trust for Tasha's benefit. The government has raised two issues on appeal. First, the government challenges one aspect of the damage award to Mr. and Mrs. Hill. Second, the government objects to the district court's refusal to grant the United States a reversionary interest in Tasha's trust. We affirm in part and reverse in part.
 
 
 2
 The district court awarded $1,017,500 to Tasha's parents for services rendered to her over the past few years when they were unable to afford professional medical care. The award was based on the estimated cost of providing twenty-four-hour nursing care, and the government does not challenge the cost estimate for such care. Rather, the government claims that the parents were merely providing largely unskilled parental care and should not be compensated for a level of care that they did not provide. The district court found that the Hills' care was equivalent both in kind and quality to the care that would have been rendered by a Licensed Practical Nurse. The government has not demonstrated that this finding was clearly erroneous. We therefore affirm.
 
 
 3
 The government has also urged that the district court erred in failing to place the award to pay for Tasha's future damages in a reversionary trust.[1] Tasha's award is based on a projected life expectancy of a normal healthy girl of her age. However, there remains a possibility that she may die prematurely, or that, for other reasons, there may be funds remaining in her trust when she dies. The government argues that Tasha's heirs would be unjustly enriched if these funds become part of her estate. Since the funds are intended to fully compensate Tasha for her medical costs and other expenses, it would be a windfall to her heirs if the funds were not fully exhausted. Thus, the government argues that any funds remaining in the trust should revert back to the U.S. Treasury.
 
 
 4
 The government's legal argument that such an approach is authorized, or indeed required, is two-pronged. In support of its position, the government cites the Colorado Health Care Availability Act, Colo.Rev.Stat. §§ 13-64-201 to -212 ("HCAA"). Under the HCAA, health care providers who are found liable for medical torts make payments of future damages in the form of periodic payments. These payments are generally funded by the purchase of an annuity. Upon the death of the "judgment creditor" (the tort victim), these payments cease, except for that portion of the payments awarded for loss of future earnings. Id. § 13-64-206(3). This provision is designed to provide increased precision in the speculative area of future losses by allowing the payment of damages as the losses are found to accrue. The HCAA eliminates, to the extent possible, the likelihood that health care providers will pay out large sums of money for losses that will never actually be sustained by the tort victim. Without the periodic payment scheme, were the tort victim to die prematurely, the unspent medical and related damages would accrue to the estate of the victim and thus represent a windfall to the victim's heirs. We note, however, that money damages awarded for loss of future earnings are exempted from this provision and become part of the victim's estate "to be paid to the heirs and devisees of the judgment creditor," id. § 13-64-206(3), just as if the victim had actually earned the wages herself.
 
 
 5
 The government does not claim that they are specifically subject to the HCAA, and indeed, it is clear that the federal government may not be ordered to make periodic payments in the manner in which the HCAA provides. Hull v. United States, 971 F.2d 1499, 1505 (10th Cir.1992) (quoting Frankel v. Heym, 466 F.2d 1226, 1228-29 (3d Cir.1972)). However, under the FTCA, the government is to be treated "in the same manner and to the same extent as a private individual under like circumstances" depending on the law of the state where the tort occurred. 28 U.S.C. § 2674 (1988). The government interprets this provision as requiring a court to fashion a remedy that will further the intent and approximate the outcome of a statute such as the HCAA--even where, as here, the statute does not itself apply to the government. Thus, if an alternative exists that would promote the purpose of the state statute and yield a practically similar result, such an alternative should be required. The government argues that, in this case, the creation of a reversionary trust would accomplish the same net result mandated by the HCAA, in that it would ensure full compensation of the victim while preventing unjust enrichment of the victim's heirs.
 
 
 6
 The government cites several cases to support its argument. See Carter v. United States, 982 F.2d 1141, 1144 (7th Cir.1992); Lozada v. United States, 974 F.2d 986, 987-89 (8th Cir.1992); Owen v. United States, 935 F.2d 734, 737 (5th Cir.), reh'g denied, 943 F.2d 1315 (5th Cir.1991), cert. denied, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992); Starns v. United States, 923 F.2d 34, 37 (4th Cir.), cert. denied, 502 U.S. 809, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); Taylor v. United States, 821 F.2d 1428, 1431 (9th Cir.1987), cert. denied, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988); Lucas v. United States, 807 F.2d 414, 417 (5th Cir.1986). These cases stand for the proposition that where there is a specific cap on tort liability, the United States government may benefit from this limit although it did not otherwise participate in the statutory scheme which provides the cap. While this proposition is undoubtedly true, in all of the above-cited cases the effect of the statutory scheme placed the tort victim in exactly the same position that would have resulted had the victim been injured by any other similarly-situated private party. Furthermore, the government, as tortfeasor, was treated in a precisely analogous fashion to a similarly-situated private tortfeasor. None of these cases offers direct support for the proposition that the United States may attempt to create a rough equivalent to a state statute when they are clearly ineligible for the precise remedy provided therein. However, even were we to endorse an imprecise equivalent to a state statutory provision in some situations (a question which we do not decide), the government's proposed alternative in this case is not sufficiently analogous to the HCAA to merit consideration because the government has failed to take into account the differential statutory treatment given to damages for loss of future earnings.
 
 
 7
 The parties have agreed that Tasha's entire award would be placed in a trust for her care. Under the government's proposal, any funds remaining in Tasha's trust would revert to the U.S. Treasury upon her death. Thus, no funds from the trust would become part of Tasha's estate. As indicated earlier, under the HCAA, the portion of damages awarded for future earnings do become part of the estate upon the victim's death. In this case, over $500,000 of the damage award is for future loss of earning capacity. Under the government's proposed reversionary trust, not only would any unspent medical cost damages be returned, but any portion of Tasha's lifetime lost wages would revert to the government as well. Such a result is clearly not contemplated by the HCAA and would not result in "like treatment under like circumstances" as mandated by the FTCA. Indeed, it would run contrary to the statute because it could potentially result in unjust enrichment of the tortfeasor at the expense of Tasha's legitimate heirs. The government has simply failed to recognize the possible inequitable consequences of its proposal.
 
 
 8
 Nevertheless, we believe that the district court can create a reversionary trust that would approximate the result contemplated by the HCAA. Under the HCAA, an award for future medical expenses would not accrue to the plaintiff's heirs upon his or her death. Thus, in this case, the government should receive a reversionary interest in that part of Tasha's award which covers future medical expenses. Specifically, the district court awarded Tasha $10,019,800 for life care costs. This award included an amount for home modification. Because the home modification award is not for future damages, it should be subtracted from the life care amount. The remaining amount of the life care award should be placed in a reversionary trust. We remand in order for the district court to create such a trust.
 
 
 9
 The government also argues that the district court under Hull v. United States has the inherent authority to create a reversionary trust in FTCA cases. See 971 F.2d at 1504-05. As the district court recognized, while it does have the inherent power to create a reversionary trust under Hull, it may only do so if it is "in the best interests of the child." Id. The burden must be on the party proposing such a plan to demonstrate that it would be in the best interests of the child. The government has offered no reasons why a reversionary trust could possibly benefit Tasha, nor can we divine any.
 
 
 10
 Accordingly, the judgment of the district court is AFFIRMED with respect to the award for future loss in earnings capacity, non-economic losses, physical impairment and disfigurement, and the parents' past care of Tasha. The judgment of the district court is REVERSED and REMANDED with respect to the life care award (excluding home modification costs).
 
 
 11
 AFFIRMED in part, REVERSED and REMANDED in part.
 
 
 
 *
 Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 Appellees argue that the government waived this issue by failing to raise it before the district court. While the government's counsel did not clearly present the issue, we hold that under the circumstances of the case, it was sufficiently presented to the district court to warrant our review