REVISED February 8, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 17, 2008

Charles R. Fulbruge III
Clerk

No. 06-31318

TEDDY J VANHOY; TAMRA VANHOY

Plaintiffs-Appellees

V.

UNITED STATES OF AMERICA

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:03-CV-1090

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

WIENER, Circuit Judge:

The government appeals the district court's ruling requiring it to make an immediate lump-sum payment of future medical care damages to Plaintiff-Appellee Teddy J. Vanhoy in this Federal Tort Claims Act ("FTCA") action. The government reurges its contention that the district court should create a reversionary trust into which the government could deposit the amount of the award and from which Mr. Vanhoy's future medical care damages would be distributed on an as-incurred basis, with any balance remaining in the trust at Mr. Vanhoy's death reverting to the government. Having been referred to no authority expressly supporting the government's proposition or requiring the

district court to create such a trust (and having found none independently), we affirm.

## I. FACTS AND PROCEEDINGS

On October 4, 1999, Teddy J. Vanhoy, a Navy veteran who had attained the rank of Master Chief prior to his retirement, underwent coronary artery bypass surgery, without complications, at the Veterans Affairs Medical Center in New Orleans. Following surgery, Mr. Vanhoy was taken to the surgical intensive care unit and placed on a ventilator, which supported his breathing through an endotracheal tube. Two days after the surgery, while being weaned from his ventilator support according to hospital protocol, Mr. Vanhoy was left unattended for several hours by the nursing personnel. During that time, the endotracheal tube that was supplying Mr. Vanhoy with oxygen became dislodged, causing him to go into respiratory and cardiac arrest. Medical records indicate that he was likely extubated for more than twenty-one minutes before his condition was discovered and attempts were made to reintubate him. While extubated, Mr. Vanhoy was deprived of normal oxygen flow and suffered anoxic brain injury, which has left him profoundly and permanently disabled.

Mr. Vanhoy and his wife, Tamra Vanhoy, sued the government for damages under the FTCA. In its answer, the government pleaded La. R.S. § 40:1299.42 of the Louisiana Medical Malpractice Act ("MMA") as an affirmative defense. Section 40:1299.42B(1) specifies that the total amount recoverable in private malpractice actions for injuries to or death of a patient shall not exceed $500,000, exclusive of future medical care and related benefits.[1] A companion provision found in § 40:1299.43 of the MMA specifies, in pertinent part, that private malpractice awards for future medical care expenses are payable, not by the negligent health care provider but from the Patients' Compensation Fund

---

[1] LA. REV. STAT. ANN. § 40:1299.42B(1).

("PCF"),[2] and then only as those charges accrue, with payment ceasing on the death of the victim.[3] The government is not a private health care provider and thus is not a contributor to or exonerated by the PCF; and the government did not plead § 40:1299.43 of the MMA as an affirmative defense. The government did, however, move for partial summary judgment on the issue of future medical expenses, urging that La. R.S. § 13:5106(B) authorizes the depositing of future medical expenses awarded in an FTCA action into a reversionary trust.[4]

The district court denied the government's partial summary judgment motion, ruling that § 13:5106 was inapplicable, as it relates only to the liability of states, state agencies, and political subdivisions. The government then filed a motion in limine, asserting that, in the event of an award for future medical expenses, "the government is entitled to be treated in the same manner and to the same extent as a private health care provider under like circumstances" pursuant to 28 U.S.C. § 2674 of the FTCA.[5] Specifically, the government insisted that a reversionary trust should be created, as it would most closely approximate the Louisiana Legislature's treatment of future medical expenses under § 40:1299.43. After the trial concluded, the district court denied this motion and ruled that "any future medicals awarded will be in the form of a lump sum payment."

The district court entered judgment against the government, ruling that the hospital nursing staff had breached the applicable standard of care when it

---

[2] The PCF is an insurance fund financed by the state's health care providers and administered by the PCF Oversight Board. The Oversight Board has the authority to receive and evaluate claims, and to pay, settle, or reject them. Claims are paid when they are approved.

[3] LA. REV. STAT. ANN. § 40:1299.43.

[4] See LA. REV. STAT. ANN. § 13:5106B(3)(a).

[5] 28 U.S.C. § 2674.

failed to monitor Mr. Vanhoy's endotracheal tube and failed to respond immediately after he began experiencing distress. The Vanhoys were awarded a total amount of $4,591,300, of which $3,500,000 was awarded to Mr. Vanhoy for his future medical care and services. The government timely filed a notice of appeal, challenging the ruling that it is required to make an immediate lump-sum payment of future medical care damages.[6]

## II. ANALYSIS

### A. Waiver

The Vanhoys assert that the government's claim to a damage limitation based on § 40:1299.43 is an affirmative defense that the government waived by failing to introduce supporting evidence at trial. The Vanhoys point out that the government offered no evidence regarding the availability of a trust mechanism that would approximate § 40:1299.43's treatment of future medical expenses, nor any evidence regarding how the trust would be created or operated.

Assuming that the applicability of § 40:1299.43 is an affirmative defense as the Vanhoys argue, we nevertheless conclude that it was not necessary for the government to introduce factual evidence pertaining to how the trust would be fashioned or whether it would afford an equivalent remedy to that provided under Louisiana law. The applicability of § 40:1299.43, and the question whether it requires the creation of a reversionary trust, are legal issues that can be resolved without the need for factual proof.[7] The availability of a reversionary trust mechanism under these circumstances has no bearing on the Vanhoys's proof of future medical care damages; instead, it merely concerns how such

---

[6] On appeal, the government does not challenge the district court's finding of liability or the amount of damages awarded. It only challenges the requirement that it pay Mr. Vanhoy's future medical care damages in one $3,500,000 lump sum.

[7] See Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986) (noting that the applicability of the Texas statutory cap on malpractice damages is a legal issue that can be resolved without the need for factual proof).

damages may be distributed. Only if the district court had ruled in favor of the government on its motion in limine would the government have been required to submit factual evidence pertaining to the details of the reversionary trust mechanism.

Moreover, the government raised the applicability of § 40:1299.43 in a timely fashion. Federal Rule of Civil Procedure 8(c) requires an affirmative defense to be set forth in a defendant's responsive pleading, with the failure to comply usually resulting in waiver of the defense.[8] "If, however, a defendant raises the issue at a 'pragmatically sufficient time,' and if the plaintiff is not prejudiced in its ability to respond, there is no waiver of the defense."[9] Here, the government failed to plead § 40:1299.43 in its answer. It did, however, raise the applicability of the provision in its motion in limine as well as in the pretrial order.[10] Additionally, the government had filed a motion three months before trial in which it advocated the use of a reversionary trust as an alternative to a lump-sum award of future medical damages.[11] As the applicability of § 40:1299.43 was raised on multiple occasions prior to trial, and as the Vanhoys had adequate notice of the government's intention to claim the benefit of the provision, the defense was raised at a pragmatically sufficient time and the Vanhoys were not prejudiced in their ability to respond.[12] We hold that the

---

[8] Id. at 417.

[9] Simon v. United States, 891 F.2d 1154, 1157 (5th Cir. 1990) (citing Lucas, 807 F.2d at 418).

[10] See McGehee v. Certainteed Corp., 101 F.3d 1078, 1080 (5th Cir. 1996) ("It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial.") (internal quotations omitted).

[11] Granted, the government cited to the wrong Louisiana statute in support of its argument in this initial motion; however, the pretrial order and the motion in limine subsequently clarified the government's legal basis for its proposition.

[12] See Simon, 891 F.2d at 1158-59 (holding that the government had waived its argument because it had failed to inform the court or the opposing party that it intended to

government did not waive its argument for the creation of a reversionary trust premised upon § 40:1299.43.

B.    Reversionary Trust

The government asserts that it is entitled to be treated in the same fashion as a private defendant in a Louisiana malpractice action based upon the "like circumstances" test of the FTCA.  Specifically, the government argues that the district court should create a reversionary trust from which Mr. Vanhoy's future medical care damages may be distributed as needed.  It maintains that such a trust mechanism most closely approximates § 40:1299.43's treatment of future medical expenses by ensuring that the damages are used only for their intended purpose, viz., compensating Mr. Vanhoy for the expenses he actually incurs during the remainder of his lifetime.  The question whether § 40:1299.43 requires the district court to provide protection to the government in the form of a reversionary trust, pursuant to 28 U.S.C. § 2674 of the FTCA, is a legal one requiring interpretation of both Louisiana and federal statutes.  We therefore review the district court's ruling de novo.[13]

"Louisiana law cannot by its law make the United States liable.  The United States is liable only to the extent it waives sovereign immunity, here by the Federal Tort Claims Act."[14]  Pursuant to 28 U.S.C. § 2674, the United States is liable in tort claims "in the same manner and to the same extent as a private individual under like circumstances . . . ."[15]  Section 40:1299.43 provides that

---

claim the benefit of the provision until after judgment had been entered); Lucas, 807 F.2d at 418 (holding that the government had not waived its argument because it had raised the applicability of the provision at trial); Owen v. United States, 935 F.2d 734, 736 (5th Cir. 1991) (holding that the government had not waived its argument in part because the applicability of the relevant provision was included in the pretrial order).

[13] Exxon Mobil Corp. & Affiliated Cos. v. C.I.R., 484 F.3d 731, 733 (5th Cir. 2007).

[14] Owen, 935 F.2d at 736.

[15] 28 U.S.C. § 2674.

whenever a victim has future medical damages that exceed the $500,000 cap on malpractice damages under Louisiana law, as is the case with Mr. Vanhoy, future medical care damages will be paid only as those charges are incurred and only for as long as care is required.[16]  When the victim dies, his heirs do not receive any remainder of the award intended for future medical care.

In support of its argument, the government cites our decision in Owen v. United States,[17] which concerned the question whether the MMA's $500,000 damages cap on the liability of private malpractice defendants applies to FTCA claims against the government.  The MMA cap, provided in § 40:1299.42, protects only qualified health care providers, meaning those who have filed proof of financial responsibility with the state insurance commissioner and have contributed to the PCF.[18]  More important to our consideration today, the cap applies only to basic tort damages and does not apply to future medical care costs.  Despite the fact that the government had neither filed nor contributed, we held in Owen that the government was in "like circumstances" with private qualified health care providers for purposes of tort damages and therefore was entitled to the cap's protection.  We noted there that "the 'like circumstances' inquiry is not overly stringent."[19]

We conclude that Owen does not require or even support the result that the government seeks in the instant case, as the reasoning for the dollar cap on tort damages is inapplicable to either the quantum or the methodology of

---

[16] LA. REV. STAT. ANN. § 40:1299.43.

[17] 935 F.2d 734 (5th Cir. 1991)..

[18] LA. REV. STAT. ANN. § 40:1299.42A.

[19] Owen, 935 F.2d at 737 (quoting Roelofs v. United States, 501 F.2d 87, 92 (5th Cir. 1974) ("[The FTCA] is given broad interpretation to effectuate the legislative aim of putting citizen and national sovereign in tort claim suits on a footing of equality as between private parties within that state.  Nice pieces of casuistry and hypersensitive legalisms are avoided.")).

distributing payments for future medicals. In Owen, we held that the government was in "like circumstances" with private individuals who had contributed to the fund because the government had met the objectives of § 40:1299.42 by virtue of its "certain and perpetual" solvency.[20] And, in reaching this conclusion, we noted that the liability of state health care providers for basic tort damages is limited to $500,000, even though, like the U.S. government, state providers do not contribute to the PCF.[21] In that case, the government and the victim could be placed on a "footing of equality as between private parties" under Louisiana law: The victim could be assured of receiving the same amount of damages that he otherwise would, and the government could benefit from the same limited liability enjoyed by qualified health care providers.

Here, the government's proposed reversionary trust would not afford the Vanhoys and the government like treatment for purposes of future medicals, and nowhere does the FTCA authorize damage awards that require the United States to perform continuing obligations.[22] The government cannot be obligated to make periodic payments of future medical care damages to Mr. Vanhoy on an as-incurred basis the way that the PCF does under the MMA scheme.[23] Moreover, Mr. Vanhoy cannot be assured of receiving such payments for as long as necessary and without limit. And, for the purpose of further distinguishing the tort damages cap from future medical care obligations, it is helpful to

---

[20] Owen, 935 F.2d at 737-38.

[21] Id. at 737.

[22] See Hill v. United States, 81 F.3d 118, 120 (10th Cir. 1996) (citation omitted); Hull v. United States, 971 F.2d 1499, 1504-05 (10th Cir. 1992) (citing Frankel v. Heym, 466 F.2d 1226 (3rd Cir. 1993)).

[23] Under the MMA framework, a plaintiff's malpractice judgment may include a finding by the trier of fact that the plaintiff needs future medical care. If a judgment containing this finding is entered, the plaintiff then makes his claims for future medical care expenses to the PCF. Funds are distributed on an as-needed basis, with the court ordinarily having no more role to play in the process.

observe that the cap is a passive, one-time line drawn in the dust whereas payment for future care is an active, continuing, and indeterminable obligation for the lifetime of the victim. Simply put, § 40:1299.43's treatment of future medicals for private individuals cannot be replicated—by a reversionary trust or other such mechanism—whereas § 40:1299.42's treatment of basic damages for professional negligence and its statutory cap thereon are susceptible of replication.

The government's argument based on La. R.S. § 13:5106B is similarly unavailing. Section 13:5106B(3)(a) provides for the establishment of a reversionary trust for the payment of future medical damages awarded in ordinary personal injury suits brought against political subdivisions of the State.[24] And, the government concedes that § 13:5106B is not directly applicable, as the FTCA makes the government liable in the same manner and to the same extent as a private individual, not a state political subdivision. Despite the fact that Louisiana law affords to its political subdivisions the remedy sought by the government, it does not afford such a remedy to a private individual: Absent like treatment to that afforded to an individual, the reversionary trust mechanism simply may not be imported and applied as the government argues.

Finally, the Ninth and Tenth Circuit opinions to which the government refers for support are distinguishable from the instant case.[25] All three cases concern guardian ad litem situations, and, in Hill v. United States and Hull v.

---

[24] LA. REV. STAT. ANN. § 13:5106B(3)(a). The reversionary trust instrument must specify that such future medical care damages be paid directly to the provider as the expenses are incurred. Id. Any funds remaining in the reversionary trust revert to the political subdivision that established the trust on the death of the claimant. LA. REV. STAT. ANN. § 13:5106B(3)(b).

[25] Dutra v. United States, 478 F.3d 1090 (9th Cir. 2007); Hill, 81 F.3d 118; Hull, 971 F.2d 1499.

United States, the Tenth Circuit qualified its authority to create a reversionary trust, remarking that it could do so only if it were "in the best interests of the child."[26] Similarly, the Washington provision at issue in Dutra v. United States requires the court to select the manner of paying future medical care damages that "best provides for the future needs of the claimant."[27] Here, the Vanhoys vociferously oppose the creation of a reversionary trust, and the government fails to advance any argument to support the proposition that the trust would somehow be in Mr. Vanhoy's best interest. In addition, in Dutra and Hill, the state statutes at issue—specifically the manner in which they treat future medical care damages—are distinguishable from § 40:1299.43.[28] We conclude that these cases do not impose an obligation on the district court creatively to fashion a remedy out of the whole cloth that approximates the result provided in § 40:1299.43.

---

[26] Hill, 81 F.3d at 121; Hull, 971 F.2d at 1504-05.

[27] 478 F.3d at 1091-92; see also WASH. REV. CODE § 4.56.260(2). Pursuant to § 4.56.260(2), the court is required to request that each party submit a proposal for periodic payment of future economic damages prior to entry of the judgment. WASH. REV. CODE § 4.56.260(2). After each party has submitted a proposal, the court is required to select the proposal, with any changes it deems proper, which in the discretion of the court and the interests of justice best provides for the future needs of the claimant. Id.

[28] See Dutra, 478 F.3d at 1091-92; Hill, 81 F.3d at 120. Under the relevant Washington provision, the court must, at the request of a party, enter a judgment that provides for the periodic payment of future economic damages. With respect to the judgment, the court must make a specific finding as to the dollar amount of periodic payments intended to compensate the judgment creditor for the future economic damages. WASH. REV. CODE § 4.56.260(2). Under the Colorado Health Care Availability Act, the trier of fact is required to make a lump-sum award in favor of the victim, which sum is then paid out in equal installments on a periodic basis until the time of the victim's death. Hill, 81 F.3d at 120. As such, the Colorado and Washington systems place a similar burden on the court as does the reversionary trust mechanism proposed by the government. The distinguishing feature, though, is that under § 40:1299.43, the trier of fact makes only an unquantified finding that the victim is entitled to future medical care damages, then the PCF assumes responsibility for the review of claims and the distribution of funds when and as future care is provided.

We understand the government's desire to avoid a windfall in favor of Mr. Vanhoy's heirs, and we note that the Louisiana Legislature did not provide for a lump-sum payment of future medical care expenses. The government's proposal for the court to be the settlor of a reversionary trust, though, fails to place the parties on a "footing of equality as between private parties" in Louisiana. Moreover, the government fails to point to any applicable authority, in the FTCA or elsewhere, that requires the district court to fashion a remedy that approximates § 40:1299.43's treatment of future medical care damages. Rather than direct the district court to create a reversionary trust from scratch, we shall follow the Third Circuit's reasoning in Frankel v. Heym,[29] an FTCA case in which the government requested that a damages award take the form of a judicially established trust for the victim's benefit. In refusing the government's proposal, the Third Circuit stated:

> We agree with the district court that in administering the legislation in question a district court should not make other than lump-sum money judgments unless and until Congress shall authorize a different type of award. The relaxation of sovereign immunity is peculiarly a matter of legislative concern, responsibility and policy. If novel types of awards are to be permitted against the government, Congress should affirmatively authorize them.[30]

We cannot help but observe that Congress has not accepted the Third Circuit's invitation in the ensuing 35 years since Heym was handed down.

The First Circuit adopted the Heym position in Reilly v. United States,[31] another FTCA case in which the government argued for an even simpler structured payout of damages—an award payable over time in periodic installments—rather than in the form of a lump sum. In rejecting the

---

[29] 466 F.2d 1226 (3rd Cir. 1972).

[30] Id. at 1228-29.

[31] 863 F.2d 149 (1st Cir. 1988).

government's proposal, the First Circuit noted that "[w]hen a tortfeasor loses at trial, then—absent a statute or the parties' contrary agreement . . .—it must pay the judgment in one fell swoop."[32] The Reilly court acknowledged that it had the authority to ensure that the award benefits the victim and to supervise the investment and use of the funds if the victim is in need of protection; however, it rejected "the proposition that the wrongdoer has a right to pay in installments where the plaintiffs are unwilling" and held that the court does not "have a right to impose a periodic payment paradigm on the parties, over protest, solely to ease the tortfeasor's burden or to suit some fancied notion of equality."[33] Reilly concerned a proposed structured payout rather than the creation of a reversionary trust; yet the First Circuit's reasoning is applicable. Like the First and Third Circuits before us, we refuse to deviate from a conventional lump-sum award by insisting that, absent particular circumstances[34] (none of which are present here), the district court create a reversionary trust—at least not until or unless Congress expressly authorizes such an arrangement.

Our unwillingness to fashion a remedy in the absence of any statutory or precedential requirement is bolstered by consideration for the district court and the burden it would face were we to remand this case with instructions for it to create a reversionary trust. The district court would be forced to assume a substantial amount of responsibility, as well as an administrative role in the

---

[32] Id. at 170. Also, we reject the government's argument that § 40:1299.43 is a "controlling statute" justifying a deviation from a lump-sum payment. See id. at 169 n.16.

[33] Id. at 170.

[34] "Periodic damage awards are permissible in lieu of lump sums in certain situations. They can be made, for instance, if a controlling statute permits . . . . Such an outcome can also be achieved by agreement of the parties in interest . . . or whether a trust, annuity, or other prophylactic arrangement is necessary to ensure that the injured party will in fact receive his due . . . ." Id. at 169 n.16 (citations omitted).

medical malpractice scheme that the Louisiana Legislature did not provide.[35] The court would be confronted with a plethora of decisions relating to the creation and operation of the trust, including, but not limited to: Who should be appointed trustee? What are the terms and conditions of the trust? How should the corpus be invested? What are the terms and conditions for covered services? How are claims to be submitted? Who is responsible for reviewing them, proving them, and paying them? In addition to these initial decisions, the district court would bear the continuing burden of supervision for the indeterminate life of the trust.[36] Absent express statutory authorization for the creation of a reversionary trust like that found in La. R.S. § 13:5106B, we will not require a district court to practice trust and estate law.

Inasmuch as (1) a reversionary trust would not place the Vanhoys and the government on a "footing of equality as between private parties" in Louisiana, (2) there is no authority requiring the creation of such a trust, and (3) ordering the district court to create and oversee a reversionary trust would place a considerable burden on it, we are convinced that the district court properly ruled that the government is required to pay future medical care damages to Mr. Vanhoy in the form of a lump sum. As the district court aptly noted, the imposition of a reversionary trust is neither required nor warranted under the circumstances of this case.

## III. CONCLUSION

The government did not waive its right to assert a claim for a damage limitation based on § 40:1299.43 of the Louisiana MMA: The applicability of § 40:1299.43, and the question whether it requires the district court to create a reversionary trust, are legal issues that the government raised in timely fashion.

---

[35] See supra note 26.

[36] See Heym, 466 F.2d at 1229 (noting that continuing judicial supervision is another consideration weighing against the government's proposal).

As such, it was not necessary for the government to introduce factual evidence pertaining to how the trust would be fashioned prior to the district court's ruling on the issue. For the aforestated reasons, however, we reject the government's argument in support of the creation of a reversionary trust. The district court's ruling requiring the government to make an immediate lump-sum payment of future medical care damages to Mr. Vanhoy was proper and, accordingly, it is AFFIRMED.