# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2014

No. 13-50905

Lyle W. Cayce
Clerk

CLARENCE LEE, SR., Individually and as Next Friend of C.L., a Minor;
ANGELIA LEE, Individually and as Next Friend of C.L., a Minor,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

The government appeals the district court's award of damages in a medical malpractice suit under the Federal Tort Claims Act (FTCA). The government does not challenge the district court's finding that it was liable; rather, it contends that the district court should have applied the Texas periodic payment statutory scheme, Texas Civil Practice & Remedies Code §§ 74.501–507, and that the district court erred in its order of post-judgment interest. For the following reasons, we VACATE the district court's judgment insofar as it failed to fashion a damages award similar to that contemplated by the Texas periodic payment statutory scheme and awarded post-judgment

No. 13-50905

interest not in compliance with 31 U.S.C. § 1304(b)(1)(A).  We REMAND to the district court for further proceedings in accordance with this opinion.

## I.

## A.

Angelia Lee took her son, C.L., to the pediatric clinic at Randolph Air Force Base (clinic) for his "well-baby" appointments.   During these appointments, C.L. should have received his required immunizations and vaccinations.  However, the clinic failed to give C.L. the required doses of the Prevnar vaccine, which is designed to prevent invasive pneumonia.  C.L. only received two of the required four doses for the Prevnar vaccine.

On December 14, 2004, Angelia took C.L. to the Brooke Army Medical Center emergency clinic (emergency clinic);  he had breathing problems, a fever, and other cold symptoms.  The emergency clinic diagnosed C.L. with an upper respiratory infection but then proceeded to send him home.  Two days later, Angelia took C.L. to the clinic because, in addition to his previous symptoms, he was not eating or sleeping properly.  An x-ray was done, which showed that C.L. had pneumonia; nonetheless, the nurse practitioner treating C.L. sent him home.  On December 17, 2004, Angelia again took C.L. to the clinic.  C.L. now had an increased heart rate and had lost weight.  The nurse practitioner again sent C.L. home and instructed Angelia to bring him back in three days.  The next day Angelia called the clinic because C.L. had greenish yellow eyes.  The nurse practitioner assured Angelia that C.L.'s eye color was merely a side effect of the medication and that there was no need to bring C.L. to the clinic before his appointment.  Angelia disregarded this advice and took C.L. to the emergency room.  After waiting three hours to be seen, C.L. was given antibiotics.  C.L. was transferred the next day to Christus Santa Rosa Children's Hospital and was diagnosed with bilateral pneumonia.  C.L. was

2

No. 13-50905

placed into a coma and had to begin dialysis treatment. Ultimately, C.L. had to receive a kidney transplant from his father.

**B.**

The Lees filed suit against the government under the FTCA, alleging medical malpractice. The Lees moved for partial summary judgment, which the district court granted. The district court found that the government breached the applicable standard of care in its treatment of C.L. A bench trial was held on the remaining issues, and the district court ruled in favor of the Lees. The district court awarded $4,863,523 for "future medical and healthcare needs" and $250,000 for "past and future physical pain and suffering, past and future mental anguish, past and future physical impairment, and past and future physical disfigurement." The government timely appealed. Thereafter, the government filed a motion for an indicative ruling with the district court, raising the issues now presented on appeal. The district court denied the motion, reasoning that the issues raised by the government "are now before the Fifth Circuit for consideration."

**II.**

**A.**

We will first address the government's contention that the district court erred by failing to apply the periodic payment scheme. Before we reach the merits of that issue, however, we must determine whether the government waived this argument. Lastly, we will examine the district court's post-judgment interest award.

**B.**

In FTCA suits, state substantive law applies; however, the Federal Rules of Civil Procedure (FRCP) govern "the manner and time in which defenses are raised and when waiver occurs." *Simon v. United States*, 891 F.2d 1154, 1156 (5th Cir. 1990) (citation and internal quotation marks omitted). Whether the

No. 13-50905

Texas periodic payment scheme constitutes an affirmative defense under FRCP 8(c) "is determined by looking to the substantive law of Texas." *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986). FRCP 8(c)(1) mandates that parties "affirmatively state any avoidance or affirmative defense" in their responsive pleadings. An avoidance "is an allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect." *Simon*, 891 F.2d at 1157 (citation and internal quotation marks omitted).

Generally, failure to comply with FRCP 8(c) results in waiver of the avoidance or affirmative defense. *Simon*, 891 F.2d at 1157. However, if "a defendant raises the issue at a pragmatically sufficient time, and if the plaintiff is not prejudiced in its ability to respond, there is no waiver of the defense." *Vanhoy v. United States*, 514 F.3d 447, 450 (5th Cir. 2008) (citation and internal quotation marks omitted).

*Vanhoy* involved a situation similar to the case *sub judice.* In *Vanhoy*, the plaintiffs sued the government under the FTCA, alleging medical malpractice. *Id.* at 449. On appeal, the government argued that the district court erred by refusing to adjust the judgment so that it resembled § 40:1299.43 of the Louisiana Medical Malpractice Act (MMA). *Id.* at 449–50. The plaintiffs claimed that the government's argument was an affirmative defense that the government waived because it failed to produce supporting evidence at trial. *Id.* at 450. We assumed without deciding that the government's argument was an affirmative defense. *Id.* However, we concluded that the defense was not waived. *Id.* at 451. First, we reasoned that the defense raised a legal question that did not need any factual development. *Id.* at 450. Second, although the defense was not raised in the government's answer, the government argued the defense in multiple motions and its

4

pretrial order. *Id.* at 450–51. Therefore, there was no waiver because it was "raised at a pragmatically sufficient time" and the plaintiffs "were not prejudiced in their ability to respond." *Id.* at 451; *see also Lucas*, 807 F.2d at 418 (holding that the government did not waive a defense it did not plead under similar circumstances). Conversely, we have held that the government waived a defense it did not plead when the defense entailed more than a legal issue. *Simon*, 891 F.2d at 1159. For example, in *Simon*, the government failed to plead a defense which would have dictated the parties' trial strategy. *Id.*

## C.

The government argues that it did not waive the application of the Texas periodic payment statutory scheme because it is not an affirmative defense. However, even assuming that the statutory scheme is an affirmative defense, the government contends that the argument is not waived because it raised the issue at a pragmatically sufficient time and Appellees were not prejudiced in responding to the request. The government also claims that this request cannot be waived because it implicates sovereign immunity. We refrain from deciding whether a request to apply the periodic payment statutory scheme is an affirmative defense because, even assuming that it is, we hold that the government did not waive the argument.

Before we delve into our analysis, we briefly detail the Texas periodic payment statutory scheme. Under Texas Civil Practice & Remedies Code § 74.503(a), "[a]t the request of a defendant physician or health care provider or claimant, the court shall order that" medical damages "be paid in whole or in part in periodic payments rather than by a lump-sum payment." For future non-medical damages, however, the district court "may order" periodic payments. *Id.* § 74.503(b). The district court is required to "make a specific finding" of the amount necessary to "compensate the claimant for the future damages" and specify the payment recipient, payment amount, payment

intervals, and the "number of payments or the period of time over which payments must be made." *Id.* § 74.503(c), (d). Upon the death of the payment recipient, periodic payments terminate for all damages "other than future loss of earnings" and "any security given reverts to the defendant." *Id.* § 74.506(b), (d).

Unlike the situation in *Vanhoy*, the government failed to properly raise this issue until after the trial concluded.[1] Nonetheless, the government requested that the periodic payment scheme be applied "at a pragmatically sufficient time and the [Appellees] were not prejudiced in their ability to respond." *See Vanhoy*, 514 F.3d at 451. As we stated in *Rogers v. McDorman*, "the prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense." 521 F.3d 381, 387 (5th Cir. 2008). In *Lucas*, the government did not waive its affirmative defense, in spite of its failure to plead it, because it was a purely legal issue that was raised at trial. 807 F.2d at 418. The government's defense did "not affect the plaintiffs' proof of damages, but simply limit[ed] the dollar amount of recovery on the damages the plaintiff *is* able to prove." *Id.* By comparison, in *Ingraham v. United States*, the government's affirmative defense was waived when it failed to raise the affirmative defense before the conclusion of the trial. 808 F.2d 1075, 1079–80 (5th Cir. 1987). We noted that the plaintiffs would have altered their trial strategy had they known of the government's intent to raise the defense. *Id.* at 1079.

It was not until after the conclusion of the trial that the government specifically mentioned the periodic payment scheme in its trial brief and

---

[1] In its answer, the government merely referenced "Texas Civil Practice & Remedies Code, Chapter 74." We need not decide, however, whether the government adequately raised the Texas periodic payment scheme in its answer because we hold that the government sufficiently raised the issue after the trial.

proposed findings of fact and conclusions of law. However, similar to the statute in *Vanhoy*,[2] the applicability of the periodic payment scheme is a legal issue "without the need for factual proof." *Vanhoy*, 514 F.3d at 450. It is not until the district court actually applies the statutory scheme that it would need to engage in any factual determination. *See, e.g.,* Tex. Civ. Prac. & Rem. Code § 74.503(c),(d) (stating that courts must "make a specific finding of the dollar amount of periodic payments that will compensate the claimant for the future damages"). The government therefore did not have to present evidence regarding the applicability of the periodic payment scheme. Additionally, Appellees were not prejudiced by the government's failure to raise this issue. To the contrary, Appellees will have the opportunity to present evidence on many of the issues they raise in later proceedings.[3] In fact, Appellees had the right to request the application of the periodic payment scheme after trial as the government did.

Appellees argue that the application of the periodic payment scheme does not implicate sovereign immunity because the amount of the government's liability is unchanged. However, that argument fails to fully appreciate the sovereign immunity waiver in the FTCA. The waiver is effective only to the same extent as a private individual in a similar circumstance. *See* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner

---

[2] In *Vanhoy*, the statute at issue provided "that private malpractice awards for future medical care expenses" would be paid from a fund set up by state health care providers and would be paid as the "charges accrue[d], with payment ceasing on the death of the victim. *Vanhoy*, 514 F.3d at 449.

[3] As for Appellees' argument that ordering periodic payments will permit the government "to double dip in reductions" to the award, Appellees misunderstand the periodic payment scheme. The district court must "make a specific finding of the dollar amount of periodic payments that will compensate the claimant for the future damages." Tex. Civ. Prac. & Rem. Code § 74.503(c). So, when applied properly, claimants are adequately compensated. The statutory scheme does not ensure that the government will pay fewer damages to Appellees.

and to the same extent as a private individual under like circumstances . . . .").

Thus, even if the government is not subjected to additional liability, the government is entitled to request the application of the same statutory mechanisms available to private individuals.

In addition, Appellees claim that the government is precluded from requesting periodic payments because it presented evidence regarding lump sum awards and failed to produce evidence supporting the imposition of a reversionary trust. However, we fail to see how the evidence presented at trial has any impact on the district court's duty to apply a mandatory statute.[4] *See* Tex. Civ. Prac. & Rem. Code § 74.503(a) (stating that once requested, a "court *shall order* that medical [damages] . . . be paid in whole or in part in periodic payments" (emphasis added)). Because we hold that the government did not waive this argument, we proceed to consider whether the district court erred by not applying the Texas periodic payment statutory scheme.

## III.

### A.

The district court's decision not to apply the Texas periodic payment statutory scheme is reviewed de novo. *Vanhoy*, 514 F.3d at 451. "The question . . . is a legal one requiring interpretation of both [Texas] and federal statutes." *Id.*

### B.

The Texas periodic payment scheme has not been applied by many courts; however, the courts to apply the statute have treated § 74.503(a) as mandatory when the enumerated conditions are satisfied. For instance, in *St. Joseph Regional Health Center v. Hopkins*, the Texas court of appeals stated

---

[4] Appellees also argue that the government waived its argument that the district court should have ordered periodic payments for the future pain and suffering damages. However, this appeal only concerns the future medical care damages.

that once requested, "the trial court shall order periodic payments, rather than a lump sum, for future damages . . . awarded in a health care liability claim." 393 S.W.3d 885, 886 (Tex. App.—Waco 2012, pet. denied) (internal quotation marks omitted).  Likewise, in *Prabhakar v. Fritzgerald*, the Texas court of appeals held that the trial court erred by failing to order periodic payments once the defendant complied with the statutory requirements.  No. 05-10-00126-CV, 2012 WL 3667400, at *11 (Tex. App.—Dallas Aug. 24, 2012); *see also Christus Health v. Dorriety*, 345 S.W.3d 104, 117 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Conversely, in *McLeod v. United States*, the district court held that, even if the periodic payment scheme was not waived, it was not required to apply it. No. 5:06-civ-00017-WRF, at *11 (W.D. Tex. April 8, 2010).  A portion of the damages awarded fell within the permissive section of the statutory scheme, § 74.503(b).  *Id.* at *12.  The district court first noted that it would not order periodic payments under § 74.503(b).  *Id.*  As for those damages that fell under the mandatory portion of § 74.503(a), the court relied on *Vanhoy* in holding that the application of the statute would impose too onerous of a burden on the court to determine, among other things, the terms of the trust, and to appoint a trustee.  *Id.* at *13–14.  Moreover, the court declined to order periodic payments on a record which it found to be "devoid of any factual evidence and devoid of any argument or explanation for the grounds supporting periodic payments and how to structure them."  *Id.* at *14.  Even assuming that § 74.503(a) is mandatory, the court stated that the defendant presented insufficient evidence to permit the application of the statute.  *Id.* at *15.

When presented with statutes similar to the Texas periodic payment scheme, other circuits have held that district courts erred when they failed to order periodic payments.  For instance, in *Dutra v. United States*, the Ninth Circuit held that the district court erred by failing to apply the applicable

No. 13-50905

periodic payment statute, § 4.56.260 of the Washington Revised Code. 478 F.3d 1090, 1091 (9th Cir. 2007). Under § 4.56.260, if requested by a party, courts are required to order that future economic damages be paid in periodic payments. *Id.* The Ninth Circuit reasoned that "[t]he FTCA authorizes courts to craft remedies that approximate the results contemplated by state statutes, and nothing in the FTCA prevents district courts from ordering the United States to provide periodic payments in the form of a reversionary trust." *Id.* at 1092.

The Tenth Circuit reached a similar result in *Hill v. United States*, 81 F.3d 118 (10th Cir. 1996). In *Hill*, the government argued that the district court should have placed the plaintiff's future damages in a reversionary trust. *Id.* at 120. Under Colorado law, a health care provider could pay an adverse judgment periodically. *Id.* Moreover, payments ceased for all damages, except for future earnings, upon the recipient's death. *Id.* The Tenth Circuit held that the government "may not be ordered to make periodic payments in the manner in which the [statute] provides." *Id.* However, the court held that the government was entitled to a reversionary trust for the future medical expenses similar to that envisioned under the statute. *Id.* at 121. As the Fourth Circuit described it, "the FTCA permits courts to craft remedies that approximate state periodic payment statutes, including reversionary trusts." *Cibula v. United States*, 664 F.3d 428, 433 (4th Cir. 2012) (internal quotation marks omitted).

### C.

Appellees urge us to follow our decision in *Vanhoy* and not impose a reversionary trust for the future damages. Appellees argue that a reversionary trust is not warranted because the statutory scheme does not provide for such a remedy. Rather, a reversionary trust is only permitted, Appellees contend, when it serves the best interest of the child. Moreover, Appellees state that an

implicit understanding existed between the parties that the damages award would be a lump sum. Appellees also argue that imposing a reversionary trust would burden the district court with additional administrative obligations. Appellees' arguments are unavailing. We hold that the district court erred by not applying the Texas statutory scheme. Although the district court could not impose a continuing obligation on the government, it should have structured the damage award in a manner resembling the periodic payment scheme.

Section 74.503(a) states that, if requested, "the court *shall order* that medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments." (emphasis added). A court has the discretion to decline ordering periodic payments only in regard to other future damages not encompassed in the subsection (a) or when the defendant "is not adequately insured." Tex. Civ. Prac. & Rem. Code § 74.503(b), § 74.505(a). The district court awarded $4,863,523 for "future medical and healthcare needs" and $250,000 for "past and future physical pain and suffering, past and future mental anguish, past and future physical impairment, and past and future physical disfigurement." The district court was therefore obligated to apply the statute once the government submitted its request. *See St. Joseph Reg'l Health Ctr.*, 393 S.W. 3d at 886; *Prabhakar*, 2012 WL 3667400, at *11; *see also Christus Health*, 345 S.W.3d at 117. Because a private individual would be entitled to the application of the statutory scheme, the government should also be permitted to have its damage award structured in the manner envisioned by the statute. *See* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ."); *see also Dutra*, 478 F.3d at 1092 (reaching an identical conclusion with a similar statute); *Hill*, 81 F.3d at 121.

Although, at first glance, *Vanhoy* appears to foreclose the government's request, the Texas periodic payment scheme is distinguishable from the statute at issue in *Vanhoy*. In *Vanhoy*, the government sought to have the district court impose "a reversionary trust from which [the plaintiff's] future medical care damages may be *distributed as needed*." 514 F.3d at 451 (emphasis added). Distinguishing *Owen v. United States*, 935 F.2d 734 (5th Cir. 1991), we held that the reversionary trust implicated different concerns.[5] *Id.* at 452–53. Because the FTCA does not permit continuing obligations against the government, the government could not be required "to make periodic payments of future medical care damages . . . on an as-incurred basis the way that" the statute envisions. *Id.* at 452. Whereas the statute in *Owen* required only a single action, we reasoned that the MMA imposed an obligation throughout the victim's lifetime. *Id.* at 452–53.

As for the government's request for a reversionary trust in *Vanhoy*, we held that Louisiana law did not permit private individuals to request reversionary trusts and, thus, the government was not entitled to request one. *Id.* at 453. Moreover, the plaintiffs objected to a reversionary trust and the government was unable to proffer how the trust would best serve the plaintiff's interests. *Id.* We distinguished *Hill*, *Hull*, and *Dutra*. *Id.* at 453–54. *Hill*, *Hull*, and *Dutra* involved "guardian ad litem situations." *Id.* at 453. Furthermore, we observe that the Tenth Circuit stated in *Hill* and *Hull* that it could create the reversionary trust only when it would be in the child's best interest. *Id.* In *Dutra*, the statute at issue required courts to impose the payment method that would best provide for the claimant's future needs. *Id.* Additionally, the statutes in *Hill* and *Dutra* were distinguishable from the

---

[5] In *Owen*, we stated that the government was entitled to the state damages cap in a FTCA suit. 935 F.2d at 737–38.

Louisiana statutes. *Id.* at 453–54. Because there was no authority mandating that the damages award be structured as the government requested, we held that, similar to *Frankel* and *Reilly*, the government's request for periodic payments and a reversionary trust must be denied. *Id.* at 454–55. We expressed concern for the administrative burden the imposition of a reversionary trust would require. *Id.* at 455. However, we stated that the case would be different had there been a statute mandating the damages award requested by the government. *Id.*

The Texas periodic payment scheme differs greatly from the statute presented in *Vanhoy*. *See Wood v. United States*, No. SA-1-CV-941, 2011 WL 1790832, at *2 (W.D. Tex. May 10, 2011) (noting differences between the two statutes); *McLeod*, No. 5:06-cv-00017-WRF, at *13 (same). The Texas scheme does not mandate that the government make payments on an as-incurred basis for the lifetime of the plaintiff; to the contrary, § 74.503(c) requires the district court to "make a specific finding of the dollar amount of periodic payments" to satisfy the judgment and subsection (d) mandates that courts note in their judgment the "number of payments or the period of time over which payments must be made." The onerous administrative burden that we feared in *Vanhoy* is therefore not present with the application of the Texas scheme. Furthermore, there is statutory authority for the damages award requested by the government in the case *sub judice*. *See* Tex. Civ. Prac. & Rem. Code § 74.503.

We have stated that awards constituting continuing obligations on the United States are not appropriate under the FTCA. *Vanhoy*, 514 F.3d at 452 ("[N]owhere does the FTCA authorize damage awards that require the United States to perform continuing obligations."). However, unlike the situation in *Vanhoy*, the district court can craft the damages award to mirror that of the Texas periodic payment scheme. As we noted in *Owen*, "[t]he 'like

circumstances' inquiry is not overly stringent." 935 F.2d at 737. Here, the district court could order "periodic payments in the form of a reversionary trust" thereby avoiding any semblance of imposing an ongoing obligation on the government. *See Dutra*, 478 F.3d at 1092. Structuring the damages award in this manner would sufficiently mirror the Texas periodic payment scheme to comply with the FTCA. *See Cibula*, 664 F.3d at 433–34; *Hill*, 81 F.3d at 121; *Dutra*, 478 F.3d at 1092. Appellees are correct that the Texas scheme does not explicitly mention a reversionary trust. *See* Tex. Civ. Prac. & Rem. Code §§ 74.505–506. However, the statutory scheme does state that upon the termination of the payments under the statute, "any security given reverts to the defendant." *Id.* § 74.506(d). Moreover, "the FTCA permits courts to craft remedies that 'approximate' state periodic payment statutes." *Cibula*, 664 F.3d at 433. Appellees' argument that Congress must expressly provide for this payment structure is unavailing. Private individuals are entitled to have the Texas scheme applied and the FTCA mandates treatment of the government in the same manner as a private individual in similar circumstances. *See* 28 U.S.C. § 2674.

Appellees' reliance on *McLeod* is not persuasive. In *McLeod*, the court declined to apply the Texas periodic payme§nt scheme because the record was "devoid of any factual evidence and devoid of any argument or explanation for the grounds supporting periodic payments and how to structure them." *McLeod*, No. 5:06-cv-00017-WRF, at *14–15. However, the court does not have discretion as to whether it must order periodic payments for at least a portion of the damages for medical care. Tex. Civ. Prac. & Rem. Code § 74.503. Moreover, a lack of evidence is not a reason to decline to award periodic payments; rather, as we noted previously, a court has discretion to decline to impose periodic payments for "future damages other than medical, health care,

No. 13-50905

or custodial services" and if the defendant "is not adequately insured." *Id.* § 74.503(b), § 74.505(a).

## IV.

## A.

The government also argues that the district court's post-judgment interest award does not comply with 31 U.S.C. § 1304, an error that Appellees do not contest. The government acknowledges that it failed to raise this issue until its motion for an indicative ruling but contends that this argument is not waived because it is jurisdictional. Appellees urge us to simply modify the district court's judgment to comply with §1304.

## B.

In *Dickerson ex rel. Dickerson v. United States*, the government did not challenge the district court's award of post-judgment interest until its reply brief. 280 F.3d 470, 478 (5th Cir. 2002). Nonetheless, we addressed the government's argument because recovery under the FTCA is limited to the government's waiver of sovereign immunity and "the government's sovereign immunity, being a jurisdictional prerequisite, may be asserted at any stage of the proceedings." *Id.*

## C.

The United States is required to pay interest "only when specifically provided for by statute because only by statute can the United States waive its sovereign immunity." *Id.* (citation and internal quotation marks omitted). Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 31 U.S.C. § 1304(b)(1)(A) provides that "[i]nterest may be paid . . . on a judgment of a district court, only when the judgment becomes final after review on appeal . . . and then only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance."

15

## D.

Because this issue has jurisdictional implications, it is properly before us. *Dickerson*, 280 F.3d at 478. We hold that the district court erred when it ordered post-judgment interest to accrue from the date of judgment. As both parties acknowledge, the district court should have ordered post-judgment interest to begin accruing "from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance." 31 U.S.C. § 1304(b)(1)(A); *Dickerson*, 280 F.3d at 478–79 ("Section 1304 applies to post-judgment interest in FTCA cases because § 1304 lists 28 U.S.C. § 2414 as one of the statutes covered thereby and [28 U.S.C.] § 2414 is the statutory authority for payment of judgments against the United States.").

## V.

For the foregoing reasons, we VACATE the district court's judgment insofar as it failed to fashion a damages award similar to the Texas Periodic Payment statutory scheme and awarded post-judgment interest not in compliance with 31 U.S.C. § 1304(b)(1)(A). We therefore REMAND to the district court for further proceedings in accordance with this opinion.