# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 2, 2024

Lyle W. Cayce
Clerk

_____

No. 23-20128

_____

John Anthony Buchanan,

*Plaintiff—Appellant*,

*versus*

Coronda Harris; Detention Officer Wang, *#130996*;
Nurse Brandi Hawking; Deputy Sheriff Sergeant J.
Wheeler; William Laws; Detention Officer W. Gibson;
Detention Officer Sergeant Pickens-Wilson;
Detention Officer Mendoza,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4571

_____

Before Jones, Clement, and Wilson, *Circuit Judges*.
Edith Brown Clement, *Circuit Judge*:[*]

John Buchanan is a pretrial detainee in the Harris County Jail. A below-the-knee amputee, Buchanan was housed for most of 2019 in a handicap unit. On November 8, 2019, however, jail officials transferred

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20128

Buchanan to a general-population unit. The next day, Buchanan filed at least two internal grievances, complaining that the general-population unit failed to accommodate his disability. Four days later, while at least one of Buchanan's grievances remained pending, Buchanan filed this federal lawsuit, making the same claims and complaining of the same conduct as in his grievances. Because Buchanan failed to exhaust available administrative remedies before filing suit, his claims are barred. We therefore AFFIRM the district court's grant of summary judgment on this basis.

## I.

## A.

Buchanan was arrested on January 20, 2019, for aggravated assault with a deadly weapon and has since been a pretrial detainee at Harris County Jail, which is operated by the Harris County Sherriff's Office ("HCSO"). Years before entering the jail, Buchanan's right leg was amputated below the knee. Consequently, Buchanan uses a prosthetic limb and a walker. Shortly after entering the jail, Buchanan was assigned to handicap housing, where he resided from January 26, 2019, until November 8, 2019. Buchanan's initial handicap unit, 2H1, contained "toilets with hand rails," "showers with seats and hand rails," and other amenities that accommodated his disability.

On November 8, 2019, however, jail officials—citing disciplinary issues—transferred Buchanan to a general-population housing unit that provided none of the disability accommodations of unit 2H1.

On November 9, 2019, Buchanan submitted at least two[1] grievances concerning the November 8 transfer from unit 2H1 to general-population

---

[1] Although the jail has record of only two grievances from Buchanan concerning, and immediately following, the November 8 transfer, Buchanan claims in his briefing and declarations to have submitted three such grievances. For reasons explained below, that

housing. The first grievance—No. 74180—was an inmate complaint form. In it, Buchanan complained that the transfer violated his disciplinary due process and sought a return to unit 2H1. The complaint form reached William Laws, the Americans with Disabilities Act ("ADA") Compliance Coordinator at the HCSO, who lacked authority to determine housing assignments, as this fell under the purview of the Medical Services division. On November 11, 2019, therefore, Laws requested that Medical Services evaluate Buchanan for a special-needs assessment, suggested that Buchanan be transferred to a handicap-accessible unit, and closed the complaint on his end. Evidently a result of Laws's referral, Buchanan received a shower chair on November 13, 2019. Buchanan did not, on that date, get returned to unit 2H1 or otherwise receive any of the other accommodations that he had in unit 2H1.

The second grievance—No. 30622—is a letter that Buchanan mailed to the ADA Coordinator for the Harris County Human Resources and Risk Management division ("HRRM"). In the letter, Buchanan explained that he was an amputee and requested access to a housing unit with the following accommodations: (1) a shower with railings and a seat; (2) a toilet with rails to help him sit down and get up; (3) a bottom bunk; and (4) ADA-compliant sinks. Buchanan threatened to sue if the jail did not comply. The ADA Coordinator at the time—Coronda Harris—received Grievance No. 30622 on November 27, 2019. In her role at HRRM, Harris lacked authority to investigate inmate grievances; she explained this to Buchanan in a December 12, 2019, response letter and further noted that she had referred Grievance No. 30622 to HCSO for investigation.

---

dispute of fact is genuine but not material here and thus does not preclude summary judgment.

No. 23-20128

Harris sent Grievance No. 30622 to Laws, who received the grievance on December 18, 2019, and began his investigation into the claims. Laws contacted the Medical Services division and asked them to consider returning Buchanan to a housing unit that would accommodate his disability. In his correspondence with Medical Services, Laws learned that, unrelated to this lawsuit, on December 11, 2019, Buchanan had been transferred to a handicap-accessible unit. Laws therefore deemed the matter "Founded/Resolved" on December 20, 2019. Yet, despite expressing his satisfaction with the new unit, Buchanan appealed Laws's resolution of Grievance No. 30622 on December 28, 2019. The Grievance Board considered the matter and, on December 30, 2019, determined that Buchanan's appeal was "Unfounded."

## B.

Buchanan submitted this lawsuit to the district court on November 13, 2019—just five days after the complained-of transfer and just four days after filing his two internal grievances concerning the transfer, at least one of which remained pending.[2] After initially suing just the HCSO, Buchanan twice amended his complaint, adding Harris, Laws, and Gibson. Buchanan argued that his transfer from unit 2H1 to general-population housing violated various constitutional provisions as well as the ADA. The district court dismissed the suit as frivolous under 28 U.S.C. § 1915(e)(2)(B). *Buchanan v. Harris*, No. CV H-19-4571, 2020 WL 3577157, at *9 (S.D. Tex. July 1, 2020). Buchanan appealed, and we affirmed in part, remanding Buchanan's ADA claim for compensatory damages "against the defendants in their official capacity." *Buchanan v. Harris*, No. 20-20408, 2021 WL 4514694, at *3 (5th Cir. Oct. 1,

---

[2] Buchanan signed the documents that attended his complaint on November 13, 2019; his complaint was deemed filed upon receipt on November 19, 2019.

4

2021). Buchanan's ADA claim for compensatory damages against Harris, Laws, and Gibson—the sole defendants sued in their official capacity—is thus the sole remaining claim in this suit.

On remand, Buchanan sought leave to file a third amended complaint, proposing to add, *inter alia*, new claims for retaliation and alleged violations of the Rehabilitation Act. The district court denied that motion, holding that the proposed amendments fell outside the scope of the circuit court's mandate for remand and would be prejudicial to the Defendants. The officials moved for summary judgment, arguing that (1) Buchanan failed to comply with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e) by not exhausting the administrative-grievance process before filing this suit, (2) the PLRA bars Buchanan's claim for compensatory damages because no evidence showed that Buchanan's November 8, 2019, housing transfer caused any physical injury beyond *de minimis* harm, and (3) Buchanan's ADA claim is meritless because there is no evidence that the defendants' alleged failure to accommodate Buchanan's disability constitutes intentional discrimination. Defendants' summary-judgment motion was the first instance in which they asserted this failure-to-exhaust affirmative defense.

The district court granted summary judgment for Defendants, holding as follows: (1) Buchanan failed to exhaust all available administrative remedies before filing this suit, and the Defendants did not waive this "failure to exhaust" affirmative defense; (2) evidence reflected at most a *de minimis* physical injury resulting from Buchanan's November 8 transfer, and (3) evidence reflected no intentional discrimination in the jail's allegedly unreasonable accommodation, as required for compensatory relief under the ADA. Buchanan appealed.

## II.

We review a grant of summary judgment *de novo*, *Favela v. Collier*, 91 F.4th 1210, 1212 (2024), "applying the same standard as the district court," *Austin v. Kroger Tex.*, *L.P.*, 864 F.3d 326, 328 (5th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A district court's ruling on whether a party waived its affirmative defense, however, is generally subject to an abuse-of-discretion standard. *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 n.8 (5th Cir. 2017) (collecting cases). We interpret pro se briefs liberally, affording all reasonable inferences that can be drawn from them. *Tex. Comptroller of Pub. Accounts v. Liuzza* (*In re Tex. Pig Stands, Inc.*), 610 F.3d 937, 941 n.4 (5th Cir.2010).

## III.

Under the PLRA, an inmate must exhaust all administrative remedies before filing suit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This requirement applies equally to pretrial detainees as it does to convicted prisoners, *id.* § 1997e(h), and it covers claims made under the ADA, *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020). "*Pre-filing* exhaustion is mandatory," and "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added); *accord Ross v. Blake*, 578 U.S. 632, 638–39 (2016). Importantly, even when an inmate seeks monetary damages, which may not be available through prison grievance proceedings, exhaustion is still a prerequisite to filing suit.

*Booth v. Churner,* 532 U.S. 731, 740–41 (2001); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Here, Buchanan filed this lawsuit just four days after he filed his two grievances. Crucially, at least one of those two grievances concerning the November 8 transfer—No. 30622—remained pending at the time Buchanan filed suit.[3] In fact, that grievance did not get resolved for another six weeks after Buchanan filed his federal lawsuit, and, by the time it did, Buchanan had been returned to fully ADA-compliant housing, as he desired.

Buchanan advances two main arguments in rebuttal. *First*, he argues that the Defendants waived their failure-to-exhaust affirmative defense by raising it for the first time in their summary-judgment motion. And *second*, he argues that the jail's administrative remedies were not actually available, and therefore need not be exhausted, because the officials in practice do not follow their own written grievance procedures. We address argument each in turn.

"Failure to exhaust" is an affirmative defense in PLRA suits. *Jones v. Bock*, 549 U.S. 199, 215 (2007). An affirmative defense generally must be asserted "[i]n responding to a pleading," FED. R. CIV. P. 8(c)(1), or "in

---

[3] Even if we were to conclude that Grievance No. 74180 was fully resolved when Buchanan received a shower chair on November 13, 2019—at a time that day before Buchanan executed the initial complaint—this would be immaterial because Buchanan's other grievance concerning the November 8 transfer—Grievance No. 30622—remained pending when Buchanan filed suit. Moreover, to the extent Buchanan is arguing that he believed that both (or all) of his grievances concerning the November 8 transfer had been exhausted when he received the shower chair, that position is unavailing because the mere fact that Buchanan may have believed his grievances to be exhausted does not mean that they actually were, which is of course the standard. Nor is it material in this particular case whether either grievance perfectly complied with the HCSO's stated grievance procedures: the operative question here is whether Buchanan, in pressing his grievances concerning the November 8 transfer, exhausted all available administrative remedies before filing this suit. As explained herein, he did not, so his claims here are barred.

the responsive pleading," FED. R. CIV. P. 12(b). Thus, as Buchanan correctly notes in his brief, this court has long held that "[a]n affirmative defense may be raised on a motion for summary judgment only if that motion is the first pleading responsive to the substance of the allegations." *United States v. Burzynski Cancer Rsch. Inst.*, 819 F.2d 1301, 1307 (5th Cir. 1987); *see also Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976).

Equally, however, this court has long recognized that "technical failure to comply precisely with Rule 8(c) is not fatal" where a party raises the defense in the trial court "in a manner that does not result in unfair surprise." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983); *accord Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981) ("Neglect to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise."). Specifically, if a defendant raises an affirmative defense "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond," the defense is not waived. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001); *accord Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007).

Accordingly, we have historically held that a failure to raise an affirmative defense like exhaustion in the first responsive pleading is excusable when the plaintiff has ample time to consider and respond to the defense in advance of trial. *See Vanhoy v. United States*, 514 F.3d 447, 450–51 (5th Cir. 2008) (holding affirmative defense not waived where it was raised for the first time in pretrial motions three months before trial); *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004) (holding there was no surprise where defendants did not "wait[] until shortly before trial" to raise exhaustion defense); *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) (rejecting waiver argument where issue was raised for first time at summary judgment because plaintiff availed itself of a fourteen-

month "ample period" to file three responsive memoranda to the summary-judgment motion and was not prejudiced in its ability to respond to the issue); *Allied Chem.*, 695 F.2d at 856 (defense, although not pled, was not waived where included in pretrial order).

Here, the Defendants did not raise the failure-to-exhaust affirmative defense in their first responsive pleadings: their answers. Nonetheless, each Defendant asserted the affirmative defense in their summary-judgment motion, which came less than three months after their answers and before a trial date was set. Buchanan had almost nine months to address this theory after it was raised and before the district court ruled on it. Buchanan first addressed exhaustion in his objections to the Defendants' summary-judgment evidence, which he filed in September 2022. Three months later, Buchanan again addressed exhaustion in a response to the summary-judgment motion, noting that he understood the law concerning exhaustion and arguing that the defense should not apply. Thereafter, Buchanan addressed exhaustion in an additional response to the summary-judgment motion. Given that Buchanan was able to formulate his arguments to counter the exhaustion issue and addressed it on three occasions, the Defendants did not raise exhaustion in a manner that "result[ed] in unfair surprise." *Lafreniere*, 221 F.3d at 808.

The district court concluded the same, holding that the Defendants' assertion of the failure-to-exhaust defense in their summary-judgment motion came at a pragmatically sufficient time and did not prejudice Buchanan. We cannot conclude that this ruling was an abuse of discretion. *See Motion Med.*, 875 F.3d at 771 n.8.[4]

---

[4] "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous": "forfeiture is the failure to make the timely assertion of a right; waiver is the 'intentional relinquishment or abandonment of a known right.'"

No. 23-20128

Buchanan's second argument is that the administrative remedies supposedly offered were, in practice, not available and, thus, need not be exhausted. Buchanan appears to argue, for instance, that the fact that he filed a third grievance of which there is no record shows that the jail does not adhere to its own grievance procedures, and, thus, its remedies are effectively unavailable.[5]

An administrative remedy that is "officially on the books" is nonetheless unavailable (1) if "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) if it is "so opaque that it becomes, practically speaking, incapable of use," such as where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it," or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

Here, the evidence shows that Laws investigated the grievance submitted to HCSO and actively took steps to have the Medical Services division address Buchanan's concerns. Contrary to Buchanan's argument, the evidence does not signal a dead end, show that the Defendants were

---

*Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.1 (2017) (alteration adopted) (citation omitted). Our case law uses the term "waiver" to describe the result of an untimely assertion of an affirmative defense. *See, e.g.*, *Vanhoy*, 514 F.3d at 450. Whether or not that description is technically correct, the ultimate holdings of *Vanhoy* and similar cases are the same: a delayed assertion of an affirmative defense is excusable where the assertion comes at a pragmatically sufficient time and is not prejudicial to the opposing party.

[5] Buchanan avers that he submitted a third grievance regarding his November 8 transfer and appears to argue that this disagreement between the parties concerning the number of grievances is a genuine dispute of material fact that precludes summary judgment. While the dispute may be genuine, it is not material because, as explained herein, at least one of Buchanan's grievances concerning the November 8 transfer remained pending when Buchanan filed this lawsuit on the same subject (and was ultimately reviewed, investigated, and resolved, rather than leading to a dead end).

10

unwilling to provide relief, reflect that the grievance process was incapable of use by the ordinary detainee, or indicate that the Defendants thwarted Buchanan from taking advantage of the grievance process. *See Ross*, 578 U.S. at 643–44. Rather, it shows that Laws ensured Buchanan's claims were reviewed, investigated, and resolved—and favorably so, insofar as Buchanan ultimately received a fully compliant unit. And Laws's review, investigation, and resolution all transpired within two days of Laws's receipt of Grievance No. 30622, which detailed Buchanan's ADA complaint and requested accommodations. Whereas Laws's receipt of the grievance was delayed by over a month, that was because Buchanan sent the letter to the wrong recipient.

In sum, the jail's grievance procedures were not unavailable such that Buchanan would be excused from exhausting internal channels before suing.

## IV.

For the foregoing reasons, we AFFIRM. Because we resolve this case on exhaustion grounds, we need not reach the remaining merits issues. Furthermore, for the same reasons that the district court provided below, we AFFIRM the district court's denial of Buchanan's motion for leave to file a third amended complaint.